## Stockton's Appeal.

1. Stockton leased of Conrad; the premises were sold to Twibill October 5th 1863, under a mortgage prior to the lease; the sheriff's deed was acknowledged March 7th 1864, and notice given to Stockton to quit; he left June 6th. *Held*, that Stockton was liable to Twibill for *use and occupation* from March 7th.

2. Twibill could have commenced ejectment March 7th, and recovered possession and mesne profits; or recovered possession and damages at the end of three months after notice, under the Landlord and Tenant Act.

3. The Orphans' Court is a court of equity, it looks only to the justice of the demand, not to the form in which it is presented.

4. The tort may be waived and assumpsit brought for the value of goods obtained by fraud. Per BREWSTER, J.

5. Remedy by assumpsit for use and occupation must be by agreement, which may be express or implied. *Id.*

January 6th 1870. Before Thompson, C. J., Read and Sharswood, JJ. Agnew, J., at Nisi Prius.

Appeal from the decree of the Orphans' Court of *Philadelphia:* No. 28½, to January Term 1870.

This appeal was from the decree of the Orphans' Court distributing the estate of L. Coates Stockton, deceased, in the hands of his administrator, Anne F. Stockton. The only question controverted was the claim of George A. Twibill for the use and occupation by the decedent, of certain premises belonging to Twibill.

The decedent had been tenant of George W. Conrad, of a storehouse in Philadelphia. On the 5th of October 1863 the premises had been sold by the sheriff under an execution against Conrad, under a mortgage prior to the lease, and were purchased by Twibill. The sheriff's deed to Twibill was acknowledged March 7th 1864. Shortly afterwards, Twibill notified the decedent to quit, but he continued in possession until June 6th 1864, which appeared to have been three months after he received the notice. The administratrix having filed her account, showing in her hands a balance of $6596.98, it was referred to William M. Bull, Esq., as auditor for distribution. Twibill's claim was for the use and occupation of the premises from the day of the sheriff's sale, being eight months, at $100 per month. He made no claim in virtue of the lease from Conrad, under which the decedent held prior to the sheriff's sale.

The auditor in his report said : * * * " A purchaser at sheriff's sale notifying a tenant to quit, dissolves the relation of landlord and tenant, and, by so doing, forfeits the right to rent which he can only claim in quality of landlord.

" The claimant here, as a purchaser at sheriff's sale, being thus disqualified in consequence of his disaffirmance of the lease between the decedent and the defendant in the execution from recovering upon the contract—can he recover for use and occupation ?

" To support a claim for the use and occupation, there must be an actual contract, either express or implied, and an action can be maintained only where the plaintiff treats the occupier as a tenant.

" In the claim before the auditor, there was no express contract, nor can any be implied, for any such inference is negatived by the fact that claimant disaffirmed the existence of any contract by the notice." * * *

The auditor disallowed the claim of Twibill, and distributed the fund between the widow and heirs.

Twibill excepted to the report.

The Orphans' Court (Brewster, J.), after stating the facts, delivered the following opinion, July 3d 1869 :— * * *

"Ordinarily it would seem to be strange that a man should be permitted to occupy land admitted to be the property of another without making the owner some compensation. It would also appear to be remarkable if the owner of the land could not—as can many other parties—waive the tort and sue in assumpsit. It must be conceded that Mr. Twibill could have maintained eject-ment and recovered mesne profits. And if so, why should he not be permitted to abandon the fiction of force, and sue upon the implication to pay for what was taken, which would prevail against him who spoiled the freehold of a load of coal or a bushel of apples? It is familiar law that the tort may be waived, and assumpsit brought for the value of goods obtained by fraud. * * *

"The difficulty of applying these principles to the action for use and occupation is, that this remedy seems to have been un-known to the common law. Assumpsit for use and occupation is the creature of the statute 2 Geo. 2, ch. 19, § 14, by which it is enacted that 'it shall and may be lawful to and for the landlord, where the *agreement* is not by deed, to recover a reasonable satis-faction for the lands * * * held * by the defendant in an action on the case for use and occupation.'

"As the Act of Parliament speaks of '*agreement* not by deed,' it has been held that assignees of a bankrupt tenant, entering upon their own motion, were not liable for the balance of the year's rent : Naish *v.* Tatlock, 2 H. B. 320. Other cases to the same effect are cited by Gibson, C. J., in Mackey *v.* Robinson, 2 Jones 172.

"From these authorities it would seem to be very clear that the statute only gives the remedy where there is an *agreement*. But this agreement need not be express—it may be implied. Thus use and occupation lies where the tenant holds over. And we are told that to support the action the plaintiff must prove—

"1. An occupation by the defendant.

"2. That such occupation was by permission ; and that 'the action lies only where there is an actual contract, either express or implied.'

"As to this implication of contract, Mr. Stephens further tells us that 'the terms of the statute may seem in strictness only to include the cases in which the relation of landlord and tenant exists. But the courts have given a wide and liberal construction to it ; and it now appears to be settled that wherever one party occupies by the permission of another, although *no agreement* for such occupation *was in contemplation* between the parties, the fact of the one having occupied by the sufferance of the other is suffi-

cient to raise *an implied assumpsit* by the other to pay for his occupation.

"In the case before us the sheriff's vendee could have brought his ejectment the day after he received his deed. He permitted the tenant to occupy the premises for three months. This, in the language of the authority quoted, raised an implied assumpsit by the tenant to pay for the occupation; and the exception is therefore sustained. * * *

"It will thus be seen that no one of the cases relied on by the accountant is at all conclusive against this claim. On the contrary, they all support Mr. Stephens's statement, that mere permission or sufferance raises the implied assumpsit. Indeed it is difficult to understand why there should be a distinction between this and many other kindred cases familiar to the student. The law presumes a promise to pay the man who saws wood or does any work for another upon simple command, or indeed by bare permission. The person who uses the goods of another is supposed to have promised to pay what they are reasonably worth. What distinction should there be between land and merchandise, the title and circumstances being all admitted?" * *

"We do not regard the provisions of the Act of June 16th 1836, Purd. 450, as interfering with the claim, for the special remedy for the recovery of damages for detention of the premises can only be invoked where the 'person in possession * * * shall refuse * to comply with the notice to quit.' Indeed, the complainant must swear that the person is in possession ' *at the time of the application*' to the justice. That was impossible in this case, for the tenant had complied with the notice; and it is plain that the law referred to can never be invoked where the occupier moves away the last day of the three months.

"It would seem to be contrary to all equity that he should not pay for what he has thus enjoyed. We do not, however, see that the claim can extend back prior to the acknowledgment of the deed. The act says that the purchaser may, 'after the acknowledgment of the deed,' give notice; and to that date his claim would seem to be limited by Bank *v.* Wise, 3 Watts 394; Braddee *v.* Wiley, 10 Id. 362; Borrell *v.* Dewart, 1 Wright 134; Hayden *v.* Patterson, 1 P. F. Smith 265.

"Subject to this modification of the claim, the exception is sustained."

The court decreed to the exceptant $300, with interest, from June 6th 1864.

The administratrix appealed to the Supreme Court and assigned this decree for error.

*W. H. Yerkes* (with whom was *T. P. Potts*), for appellant.— Use and occupation cannot be maintained without proof of a con-

tract express or implied: 3 Stephens N. P. 2718; Pott *v.* Lesher, 1 Yeates 576; Wharton *v.* Fitzgerald, 3 Dall. 503.   The statute 11 George 2, c. 19, § 14, which gives this remedy, requires an agreement.   Permission or sufferance is not sufficient: Stephens N. P. 2721; Henwood *v.* Cheeseman, 3 S. & R. 500.   The right to the current rent is subject to the will of the purchaser at sheriff's sale, by the Act of 1836: Menough's Appeal, 5 W. & S. 433.

The purchaser may affirm or disaffirm the lease, and he elects to do the latter by giving notice to quit: Bank *v.* Ege, 8 Watts 436; Hemphill *v.* Tevis, 4 W. & S. 535.

No action for use and occupation can be maintained where possession has been treated as that of a trespasser: Birch *v.* Wright, 1 Term R. 378.   Ejectment is the only remedy: Mackey *v.* Robinson, 2 Jones 172.   He cited also Richey *v.* Hind, 6 Hammond 371; Stockett *v.* Watkins, 2 Gill & Johns. 326; Lloyd *v.* Hough, 1 How. 153.

*H. Flanders,* for appellee, was stopped by the court.

The opinion of the court was delivered, January 10th 1870, by

Read, J.—L. Coates Stockton was in his lifetime tenant or lessee of the premises 216 Market Street, and during his occupancy, they were sold by the sheriff, under proceedings to foreclose a mortgage thereon, which was a lien prior in point of time, to the lease under which the decedent was tenant.

The property was sold by the sheriff on the 5th day of October 1863, purchased by George A. Twibill, and the sheriff's deed to him was acknowledged on the 7th day of March 1864.   The purchaser served a notice upon decedent to give up the possession within three months, and on the 6th of June 1864, the said decedent gave up possession of the premises.

Before the auditor, Mr. Twibill claimed $800, which was rejected, and upon exceptions filed to the report, the court sustained the same and decreed the payment of $300, with interest from June 6th 1864, to the said George A. Twibill for the use and occupation of the premises from the 7th March 1864.

From this decree this appeal is taken.   On the 8th of March 1864, Twibill could have commenced ejectment in which he could have recovered the possession and the mesne profits.   If the decedent had held over after the expiration of the three months, upon proceedings under the Act of Assembly, before two justices or aldermen he would have recovered the damages assessed by the jury.   In the one case it would be called mesne profits, in the other damages.   But the decedent stood neither ejectment, nor the summary proceeding before the aldermen, but quietly surrendered the possession.

For this occupation and use of the premises, the decedent was

undoubtedly bound to make compensation, and whether this be called mesne profits, or damages, or could be recovered in an action on the case for use and occupation, is entirely immaterial, for the Orphans' Court is a court of equity, and looks only to the justice of the demand, and not to the form in which it is presented. The decree reaches the real justice of the case, and it is therefore affirmed at the costs of the appellant.